(124 So. 119)

**STATE v. H. G. FAIN SERVICE STATION.**
**(6 Div. 576.)**

Court of Appeals of Alabama.   May 28, 1929.

Rehearing Denied June 25, 1929.

Charlie C. McCall, Atty. Gen., and A. A. Evans, Asst. Atty. Gen., for the State.

[1] Ante, p. 238.

240

Chas. E. Rice and Lucien D. Gardner, Jr., both of Birmingham, for appellee.

BRICKEN, P. J. This action was brought by the state to recover of appellee, defendant below, a license tax for the operation of a gasoline filling station located within the corporate limits of the city of Homewood, which city had a population of over 5,000 and less than 12,000 inhabitants during the period covered by the license, and said filling station was also within five miles of the corporate limits of the city of Birmingham, a city having a population of over 100,000 inhabitants.

The controlling question here is an interpretation or construction of section 20 of the revenue law of 1927 (Laws 1927, p. 161). This section reads as follows: "Each person, firm or corporation operating for profit a gasoline filling station or pump in cities or towns, or within five miles thereof, shall pay the following privilege tax: In cities of one hundred thousand inhabitants and over, where only one pump or filler is used, Fifty Dollars ($50.00), and for each additional pump Fifty Dollars ($50.00); in cities of Forty Thousand inhabitants and less than One Hundred Thousand, where only one pump or filler is used, Forty Dollars ($40.00), and for each additional pump Forty Dollars ($40.00); in cities of Twelve Thousand inhabitants and less than Forty Thousand, Thirty Dollars ($30.00) where only one pump filler is used and for each additional pump or filler, Thirty Dollars ($30.00); in cities or towns of Five Thousand inhabitants and less than Twelve Thousand, Twenty-five Dollars ($25.00) where only one pump or filler is used, and for each additional pump, Twenty-five Dollars ($25.00); in incorporated towns of One Thousand inhabitants and less than Five Thousand, where only one pump or filler is used, Twenty Dollars ($20.00) and for each

additional pump or filler, Twenty Dollars ($20.00); in incorporated towns of less than One Thousand inhabitants Ten Dollars ($10.00) and for each additional pump or filler Ten Dollars ($10.00); and in all other places Five Dollars ($5.00) for each pump or filler."

As stated, the state seeks, through this action, to recover from defendant (appellee) $100 as the privilege tax due the state by the defendant for the operation of such a filling station, using two pumps, *within five miles* of the city of Birmingham, a municipal corporation having a population of 100,000 inhabitants and over. Defendant, by plea, asserted that he did operate such a filling station, but that it was located within the corporate limits of Homewood, a city of 5,000 and less than 12,000 inhabitants, and that he is liable only for the tax provided by statute for filling stations in cities of that class. The state insisted, through motion to strike and demurrer to the plea, that this was no answer to the complaint.

Construing the section as a whole, we gather the intent of the Legislature to levy a tax upon every gasoline filling station operated for profit within the state, those urbanly situated at a rate graded according to the population of the city or town. Those stations located without the corporate limits of any city or town are divided into two classes; those *within five miles* of a city or town, and those *in all other places*. Those of the first class take the same rate as applies in the city or town to which they are so adjacent; those of the other class take a flat rate of $5 for each pump used.

We are of the opinion that the phrase "or within five miles thereof" has no application to stations located within the corporate limits of any city or town, whatever its population or its situation as to some other city or town. It is an alternative, and comes into operation only in the absence of the other condition, viz., location within a city or town. Where a station is located within a city or town, the rate of the tax is to be computed according to the population of such city or town, without any other condition.

The gist of the state's contention is that, where a filling station is located within five miles of a city of a given population, the station is subject to be taxed according to the rate applicable to said city, and, further, that the fact that said station is located within the corporate limits of another city or town of lesser population does not exempt the operator from the payment of the tax applicable to the city to which it is within five miles adjacence; in other words, that the controlling purpose and meaning of the statute was to tax filling stations at the highest rate to which, by any method of computation, they could be subjected. This contention, we think, is obviously untenable. Such a con-

struction would do violence to the very language employed.

■ "When the intention of the legislature is so apparent from the face of a Statute that there can be no question as to the meaning, there is no room for construction. It is not allowable to interpret what has no need of interpretation." 2 Lewis Sutherland Statutory Construction·(2d Ed.) p. 702.

■ A rule of general application is that taxation statutes are to be construed strictly in favor of the taxpayer and against the government. Yarbrough Bros. Hdw. Co. v. Phillips, 209 Ala. 341, 96 So. 414. It follows that, if the phrase, "or within five miles thereof," be interpreted as a conjunctive condition, then a station located within a city or town, but within five miles of another city or town, would take the rate applicable to the lesser in population of the two. In other words, a station in the city of Birmingham would be entitled to the Homewood rate. This, of course, would be an incorrect and improper interpretation, just as would the interpretation insisted upon by the state, in view of the plain language of the statute.

■ The state cites section 377 of the Revenue Act of 1919 (p. 445), providing that, where the amount of license is rated according to population, the population as fixed by the last preceding United States census shall govern. It is insisted that since the last census does not enumerate the city of Homewood, and since Homewood came into existence as a corporate entity subsequent to such census, it has, for the purpose of section 20 of the 1927 act. no population, and, hence, that the Birmingham rate must be applied in this case. We cannot accede to this insistence. The evident purpose of section 377 was to make certain that which might be otherwise uncertain; that the United States census should be the basis for determining population taking precedence over any other census. See Ex parte Jones, 212 Ala..259, 102 So. 234. In other words, the section could only mean *where there is* such a census taken by the United States. No such census having been taken, of necessity, the actual population must apply. To hold that, for the purposes of a taxation statute, where there was no federal census there is no population, would lead to at least a partial defeat of such taxation statute. For example, suppose the creation of a populous municipality subsequent to a federal census, situated more than five miles from any other incorporated municipality, could it be logically held that such municipality had *no population,* and that the fortunate citizens thereof should enjoy the low rates, or the exemption from rates, that would apply to rural communities? The question answers itself. And further, suppose the five-mile limit from Birmingham ex-

tended into only a portion of the territory of the city of Homewood, and that the remaining portion of said city was not within said limit. If the state's contention here should prevail, the anomalous condition would be presented that within the said city of Homewood two separate and distinct rates upon gasoline filling stations would apply, and those within the five-mile limit must pay the high rate, and the filling stations just beyond but not within the five-mile limit the low rate, yet both stations are within the same city. This we do not think was contemplated by the Legislature in the passage of this act.

The rulings of the trial court are in accord with the views here expressed. Its judgment is affirmed.

Affirmed.

SAMFORD, J. (concurring). I am concurring in the conclusion reached by the court in this case, not alone for the reasons given in the opinion, but I am further of the opinion that the entire section levying this license is bad, and should be so declared, for the reason that it is vague and uncertain in its application, and cannot be made certain by judicial construction without judicial legislation.