197 So. 379

**STATE v. DOWNS.**

**5 Div. 86.**

Court of Appeals of Alabama.

April 2, 1940.

Rehearing Denied April 30, 1940.

Reversed on Mandate June 29, 1940.

Reynolds & Reynolds, of Clanton, for appellee.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellant.

BRICKEN, Presiding Judge.

The State brought suit against J. B. Downs, doing business under the name of Forest Lumber & Tie Company, to recover a license or privilege tax from defendant as a wholesale dealer in lumber, for part of the year 1933, and for all of the years 1934, 1935, 1936, and 1937, and also to recover certain license tax citation fees alleged to be due from said defendant. The suit was commenced on the 26th day of March, 1937.

The defendant demanded a jury trial, and the cause was submitted to the court and jury upon an agreed statement of facts, and the testimony of certain witnesses.

It appears from agreed statement of facts, which is set out in the bill of exceptions, that from sometime in the month of July, 1933, to and including November 3, 1936, the defendant did business in the City of Clanton, Alabama, under the name

and style of Forest Lumber & Tie Company.

During the specified period of time, alleged in the complaint, it appears, from said agreed statement of facts, that the defendant purchased standing timber; that he contracted with or hired persons to cut the trees; that he contracted with or hired persons to haul logs to designated saw mills; that he contracted with or hired persons operating said saw mills to saw said logs into timber and lumber; that he contracted with or hired persons to haul said timber and lumber from said saw mills to his lumber yards in the City of Clanton, Chilton County, Alabama; that he stacked said timber and lumber, on his lumber yard, for drying, grading, and lignasan-treatment; that after said timber and lumber was dried upon his yard, he planed, dressed, sized, and double end trimmed the same; that he sold said timber and lumber from his said lumber yard to wholesalers, retailers, and consumers in car lots, or in less quantities; that the defendant did not in person operate any saw mills or obtain any license therefor; that the sawing and manufacture of said timber and lumber was done under the direct supervision and control of the defendant during the period of time above stated; that no lumber of any consequence was sold by the defendant in the rough as it came from the mill, but the same was sold by him after it was dried, sized, planed, treated and serviced at his lumber yard as above stated; that a small quantity of the saw logs was cut into large timber or lumber, and was sold in the rough, but only after it was double end trimmed into proper lengths, of which some was dried before being sold; that during the entire specified period of time defendant operated a lumber yard in the City of Clanton, Alabama, a city of less than 7,000 inhabitants, under a proper license issued under the provisions of Schedule 125, Section 361 of the Revenue Act then in force, Genl.Acts of Ala.1919, page 438; Genl.Acts of Ala.1935, p. 473, § 348, Schedule 83, for the operation of a lumber yard and that defendant did not obtain during said period of time any license for engaging in business as a wholesale dealer in lumber or timber under either Schedule 126 of the General Revenue Act of 1919, or Schedule 84, of the General Revenue Act of 1935.

The plaintiff introduced a witness, Howard Roper, who testified to the service of the citations for which the citation fees described in the complaint were sued for.

The defendant introduced two witnesses, W. C. Robinson and H. S. Shaw, who had been in the lumber business, each respectively, for a long number of years, and each of whom testified with respect to who are wholesale lumber dealers,. and who are lumber manufacturers.

The State proved by witness W. C. Robinson, on cross-examination, that a statement, or paper writing, dated November 16, 1935, and headed "The Forest Lumber & Tie Company, Wholesalers Yellow Pine Lumber, Clanton, Alabama," was one of the statements used by such company in the conduct of its business, and is some of the stationery used by them.

It does not appear, and the testimony does not show, that any of defendant's. manufactured lumber, sold by him, was. yellow pine lumber, or that he made any sales of yellow pine lumber at all.

The above, and foregoing, was all the evidence introduced upon the trial, and upon this evidence the State asked for the general affirmative charge, which was refused, and the defendant asked for the general affirmative charge, which was given by the court.

The appellant assigns three errors upon this record, as follows: (1) The refusal of the trial court to give the affirmative charge in behalf of the plaintiff; (2) The giving of the affirmative charge by the trial court in favor of defendant; and, (3) The entry by the trial court of its. judgment in favor of defendant.

This court has given careful and attentive consideration to all of the testimony shown by the bill of exceptions, which is a part of the record in this case. From this. testimony this court is of the opinion, and so adjudges, that the defendant, from July,. 1933, down to and including November 3, 1936, was engaged in the manufacture of lumber, and that in connection with said business he operated a lumber yard in the City of Clanton, Alabama.

This court entertains no doubt whatever from said testimony that all of the lumber and .timber sold by defendant at wholesale was so sold by him as the manufacturer thereof.

In the case of Beggs v. Edison Electric Illuminating Company, 96 Ala. 295, 11 So. 381, 383, 38 Am.St.Rep. 94, the Supreme Court, (through Mr. Chief Justice Stone)

said: "The word 'manufacture' means the making of anything by hand or artifice. Louisville & N. R. Co. v. Fulgham, 91 Ala. 555, 8 So. 803. Mr. Worcester's Dictionary defines 'manufacture' as 'the process of making anything by art, or of reducing materials into a form fit for use by the hand or by machinery.' The definition that the word is given by the Century Dictionary is as follows: 'The production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery.' According to the above definitions of the word 'manufacture,' we are constrained to consider and declare an electric light company a manufacturing corporation to all intents and purposes."

According to the weight of authority, and common understanding, manufacturer and merchant, seller and dealer, are distinguishable terms. A merchant sells to earn profit, a manufacturer sells to take profit already earned.

Schedule 125 of the General Revenue Act of 1919, approved Sept. 15, 1919, Genl. Acts of Alabama 1919, p. 438 requires the procurement of a license for the operation of a lumber yard, while Schedule 126 is as follows: "Exporter Of Lumber:—For each exporter, wholesale dealer, or jobber of lumber or timber, and for each dealer in lumber and timber on commission, one hundred dollars."

The provisions of the General Revenue Act of 1919 were in force and effect in this State until the passage and approval of the General Revenue Act of 1935, approved July 10, 1935. Under Schedule 83 of the Revenue Act, supra, a license for the operation of a lumber yard is required, while Schedule 84 of that Act is as follows: "For each wholesale dealer, or jobber of lumber and timber and for each wholesale dealer in lumber and timber on commission whether maintaining an established place of business or not, One Hundred Dollars."

The suit brought by the State was to recover licenses and taxes claimed as being due the State under Schedule 126 of the General Revenue Act of 1919, supra, and under Schedule 84 of the General Revenue Act of 1935, supra, and the only question to be decided by this court is whether or not the defendant, who was solely engaged in the manufacture of lumber and timber and who operated a lumber yard as a necessary part of his process of manufacture, is liable for the license tax provided by Schedule 126 of the General Revenue Act of 1919, supra, and by Schedule 84 of the General Revenue Act of 1935, supra.

The general rule applicable to the question under consideration, is that taxation statutes are to be construed strictly in favor of the taxpayer and against the State. State v. Fain Service Station, 23 Ala.App. 239, 124 So. 119; Jefferson County v. Smith, 23 Ala.App. 421, 125 So. 401; State v. Roden Coal Co., 197 Ala. 407, 73 So. 5.

In the case at bar, there is no evidence justifying a finding that the defendant, throughout the period of time specified in the complaint, was other than a manufacturer, selling as such, the lumber and timber which he manufactured.

In the case of Nash v. State, 21 Ala.App. 613, 110 So. 797, 798, this court, dealing with two Schedules of the respective Revenue Acts, supra, said: "Schedule 129 is applicable to those persons whose business is that of buying, selling, and handling lumber and timber substantially in the form in which it is bought, and does not apply to those who buy the crude lumber or timber, and by skill and labor convert it into a finished manufactured product. Such a one is a manufacturer, and not a trader. In this lies the distinction between schedules 125 and 129. Schedule 125 applies to a manufacturer, who takes the crude material, and by the aid of machinery, skill, and labor converts it into a higher and more finished product. As such he has the right to sell and dispose of his product under a license issued in pursuance to schedule 125. Schedule 129 applies to those persons who trade in lumber or timber, buying, selling, and handling the product as it comes to their hands, and without substantial change. State v. Chadbourn, 80 N. C. 479, 30 Am.Rep. 94; 26 R.C.L. p. 239, par. 212."

We have stated that Schedule 125 of the Revenue Act of 1919, is practically identical with Schedule 83 of the General Revenue Acts of 1935. It is, therefore, apparent that in the adoption of Schedule 83 of the General Revenue Act of 1935, the construction which this court had placed upon Schedule 125 of the General Revenue Act of 1919, entered into and became a part of said Schedule 83, of said Act of 1935, supra. Compton v. Marengo County Bank, 203 Ala. 129, 82 So. 159; Jones v. State, 10 Ala.App. 152, 65 So. 411.

■ There was no conflict in the testimony showing that the defendant was the manufacturer of the timber and lumber which he sold. Nor was there a scintilla of evidence to the effect that the timber and lumber which he sold during the period of time specified in the complaint were not manufactured by the defendant.

It follows, therefore, that the trial court did not err in refusing to give the affirmative charge in behalf of the plaintiff, nor in giving the affirmative charge requested in writing by the defendant, and further, in entering judgment in behalf of the defendant.

The judgment appealed from will stand affirmed.

Affirmed.

PER CURIAM.

Reversed and remanded on authority of State v. Downs, Ala.Sup., (5 Div. 324) 197 So. 382.