**In re The ELI WITT COMPANY, Debtor.**

**Bankruptcy No. 96–15441–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 26, 1997.

Robert A. Soriano, Tampa, FL, for Debtor.

Robert A. Schatzman, Miami, FL, Stuart Hertzberg, Detroit, MI, for Creditor Committee.

**ORDER ON AMERICAN HOME ASSURANCE COMPANY AND AMERICAN INTERNATIONAL GROUP, INC.'S (AIG) MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON AIG'S APPLICATIONS FOR ADMINISTRATIVE EXPENSE FOR THEMSELVES AND FOR THE USE AND BENEFIT OF THE STATE OF FLORIDA—DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION AND FOR THE USE AND BENEFIT OF THE STATE OF ALABAMA—DEPARTMENT OF REVENUE AND DEBTOR'S OBJECTIONS TO APPLICATIONS FOR ADMINISTRATIVE EXPENSES OF AIG**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a yet to be confirmed Chapter 11 case and the contested matters presented for

this Court's consideration are the Motions for Partial Summary Judgment on the Applications for Allowance of Administrative Expense filed by American Home Assurance Company and American International Group, Inc. (AIG); and Eli Witt's (Debtor) objections to the same. AIG filed the Applications on their own behalf and for the use and benefit of the State of Florida, Department of Business and Professional Regulation and for the use and benefit of the State of Alabama, Department of Revenue. The Applications are challenged by the Debtor which contends that the claim of AIG is not entitled to administrative expense priority pursuant to Section 503(b) of the Bankruptcy Code.

In its Applications, AIG requests an allowance of an administrative expense against the Debtor's estate for taxes which arose as a result of post-petition sales of cigarettes. AIG also asserts an administrative expense claim, in an amount to be determined by this Court at a later time, for stamps used on packages of cigarettes sold post-petition and for which the Debtor has not paid to the State of Florida or the State of Alabama. The issue to be determined at this time is when the liability occurred, specifically whether the liability occurred when (a) the Debtor received the tax stamps; (b) when the stamps were affixed to the cigarettes' packages; or (c) when the cigarettes were sold.

The Court heard argument of counsel, has considered the record including the stipulated facts, and based on the foregoing, now finds and concludes as follows:

The Debtor filed its voluntary Chapter 11 Bankruptcy Petition on November 12, 1996 (Filing Date). At all relevant times, the Debtor was a wholesale dealer of cigarettes in Florida and a distributing agent of cigarettes in Dade County, Florida pursuant to Florida Statutes, Chapter 210. Additionally, at all relevant times the Debtor was a wholesale dealer of cigarettes pursuant to Alabama Code Title 40, Chapter 25.

Prior to the Filing Date, the Debtor had been provided with cigarette tax stamps by Florida and revenue stamps by Alabama for which the Debtor had not paid. Under the relevant tax statutes, dealers must purchase tax stamps by paying for them on receipt or obtain them on credit by securing a bond. AIG has issued certain bonds in favor of Alabama and Florida with respect to tax stamps received by the Debtor on credit. As of the Filing Date these stamps, provided and unpaid for, were either still unaffixed to packaged cigarettes or affixed to packaged but unsold cigarettes. It is further without dispute that subsequent to the filing, the Debtor sold a yet to be determined volume of packaged cigarettes upon which these provided yet unpaid for stamps were affixed. On October 14, 1997, the State of Alabama, Department of Revenue filed it's Notice of Joinder to AIG's Application for Allowance of Administrative Expense. (Doc. No. 509A).

It is the contention of AIG that the Debtor's liability to the States for the cigarette taxes arises at the sale of the cigarettes. However, prior to the sale of the packaged cigarettes the dealer must obtain stamps from the States which represent the anticipated tax to be collected by the dealer and, in turn, paid to the States. In its Motion for Partial Summary Judgment, AIG seeks an administrative expense for the unpaid tax obligation which arose from post-petition sales of cigarettes.

AIG asserts that the right to payment arises at the sale of the packaged cigarettes. Thus, the liability for the stamps acquired pre-petition but which were used on packages of cigarettes sold post-petition, is a post-petition liability and entitled to an administrative expense. AIG contends that there is a distinction between the collection of the tax and the actual transaction giving rise to the tax.

With respect to Florida law, to illustrate this contention, AIG points to Florida Statutes § 210.05(5), which provides for the sale of "stamped but untaxed cigarettes" to the Seminole Tribe. Further, this Statute prohibits the dealer from collecting from the purchaser, that being the Seminole Tribe, "the tax imposed by § 210.02." AIG asserts that this is further clarification that the triggering event for the liability is the transaction described in *FLA. STAT.* § 210.02, that being the sale or transaction within the state.

*See also Seminole Tribe of Florida v. State Dept. of Bus. Reg., Div. of Alcoholic Beverages and Tobacco,* 496 So.2d 193 (Fla.App.1st Dist.1986).

AIG also points to Florida Statutes, § 210.11, which governs refunds. Section 210.11 states that when stamped cigarettes

"... have been sold and shipped into another state for the sale or use therein, or have become unfit for use and consumption or unsalable, or have been destroyed, the dealer involved shall be entitled to a refund...."

This Chapter also provides for the redemption of unused stamps and thus, further supports AIG's position.

In Alabama, cigarette taxes are governed by Title 40, Chapter 25 of the Alabama Code. Specifically, Alabama Code § 40–25–2(f) states in part,

"[T]he purpose and intent of this provision that the tax levied is in fact a levy on the ultimate consumer or user with the wholesaler, distributor, jobber, or retail dealer acting merely as an agent of the state for the collection and payment of the tax to the state."

However, Alabama does not provide for a refund of any taxes paid by a dealer on cigarettes which were subsequently lost by theft, casualty, or failure to sell for any reason. *State v. Killian Wholesale Grocery, Co.,* 289 Ala. 691, 271 So.2d 499 (1972); *Butler & Kennamer Wholesale Company v. State,* 293 Ala. 216, 301 So.2d 178 (1974).

As an alternative argument on behalf of Alabama, AIG asserts a trust fund theory. In support of this theory, AIG refers back to Alabama Code § 40–25–2(f). Pursuant to this Statute, as quoted above, the dealer acts merely as an agent of the State for the collection and payment of the tax on the sale of cigarettes and/or other tobacco products. Accordingly, AIG asserts that the money the Debtor collects from a purchaser for the tax is held in trust for the State. In this respect, AIG seeks an administrative expense for the entire unpaid tax obligation arising from pre-petition and post-petition sales of cigarettes. However, AIG does not seek a determination

of this issue in its Motion for Partial Summary Judgment.

The Debtor asserts that the obligation to the States arises at the time the stamps are acquired and not at the time of the actual sale of the cigarettes. Thus, stamps acquired pre-petition, to be affixed on packages of cigarettes which were not actually sold until post-petition, give rise to a pre-petition unsecured claim against the Debtor's estate and are not entitled to administrative expense priority.

■ Section 503 of the Bankruptcy Code defines an administrative expense as "the actual, necessary costs and expenses of preserving the estate including wages, salaries, commissions for services rendered after the commencement of the case." Administrative expenses under § 503 "should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." *In re Colortex Industries, Inc.,* 19 F.3d 1371, 1377 (11th Cir.1994).

■ Additionally, the Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). It was Congress' intention for the definition of claim "to have a wide scope." *In re Chateaugay Corp.,* 944 F.2d 997 (2nd Cir.1991).

■ Clearly at the time the Debtor entered into the agreement with AIG, AIG became conditionally liable to the States and the Debtor became conditionally liable to AIG. The States had a right to payment from AIG, albeit only if the Debtor did not pay the States for its tax stamp liability. Additionally, AIG had a right to payment from the Debtor only if the Debtor did not pay the States and thus AIG had to pay the States on the Debtor's behalf. Nevertheless, AIG's conditional right to payment from the Debtor arose pre-petition, when the Debtor entered into the agreement with AIG.

■ Further, one must concede that the Debtor's liability for the stamps, was not triggered until the tax stamps were obtained.

However, since the agreement with AIG was pre-petition and the tax stamps were obtained pre-petition, it is fair to say that these are pre-petition liabilities and do not fall into the category of administrative expense. The fact that the cigarettes were sold post-petition is of no consequence. Additionally, the fact that the Debtor may have been entitled to a refund in the event that the cigarettes were unfit for use or destroyed, is also without consequence.

By analogy, case law has established that the post-petition use of tax stamps, obtained pre-petition, was not an event which gave rise to an administrative expense claim. See *In re Yanks*, 49 B.R. 56 (Bankr.S.D.Fla.1985) (private insurer not entitled to administrative expense priority for post-petition payments made under insurance policy where all operative acts and legal relationships occurred pre-petition); *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.1988), *cert. denied*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988) (if tortious acts or breach of warranty occurred pre-petition, the claim is a pre-petition claim); *In re Chateaugay Corp.*, 944 F.2d 997 (2nd Cir.1991) (response costs incurred by EPA were pre-petition claims if these costs concerned the release or threatened release of hazardous waste occurring pre-petition); *In re Broaddus Hosp. Ass'n*, 159 B.R. 763 (Bankr.N.D.W.Va.1993) (where injury occurred pre-petition and private insurer paid claim post-petition, private insurer stepped into the shoes of the injured party and was denied administrative priority status); *In re Chateaugay Corp.*, 177 B.R. 176 (S.D.N.Y.1995), *judgment aff'd by*, 89 F.3d 942 (2nd Cir.1996) ("[W]orkers' compensation payments paid on behalf of the debtor in possession to employees for pre-petition injuries should not be classified as an administrative expense."). Here, the Debtor obtaining the tax stamps was the action which caused the Debtor's liability and AIG's claim. Since the Debtor obtained these stamps pre-petition, AIG's claim arose pre-petition. AIG's claim, therefore, is a pre-petition, unsecured claim, not entitled to administrative expense.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that AIG's Motion for Partial Summary Judgment on State of Alabama, Department of Revenue's Application for Allowance of Administrative Expense (Doc. No. 486A) be, and the same is hereby denied.

It is further

ORDERED, ADJUDGED AND DE-CREED that summary judgment is hereby entered in favor of the Debtor and against AIG to the extent that AIG seeks to impose liability for an administrative expense for that portion of the amount due the State of Alabama by the Debtor for stamps provided and unpaid for as of the filing of the bankruptcy petition. AIG, on behalf of itself and the State of Alabama—Department of Revenue shall have an unsecured claim in an amount to be determined at a final evidentiary hearing, for that portion of amounts due by the Debtor for stamps provided and unpaid for as of the filing of the bankruptcy petition.

It is further

ORDERED, ADJUDGED AND DE-CREED that AIG's Motion for Partial Summary Judgment on State of Florida—Department of Business and Professional Regulation's Application for Allowance of Administrative Expense (Doc. No. 486C) is hereby denied. It is further

ORDERED, ADJUDGED AND DE-CREED that summary judgment is hereby entered in favor of the Debtor and against AIG to the extent that AIG seeks to impose liability for an administrative expense for that portion of the amount due the State of Florida by the Debtor for stamps provided and unpaid for as of the filing of the bankruptcy petition. AIG, on behalf of itself and the State of Florida—Department of Business and Professional Regulation shall have an unsecured claim in an amount to be determined at a final evidentiary hearing, for that portion of amounts due by the Debtor for stamps provided and unpaid for as of the filing of the bankruptcy petition. It is further

ORDERED, ADJUDGED AND DE-CREED that a pretrial conference is hereby scheduled before the undersigned in Courtroom C, 4921 Memorial Highway, Tampa,

Florida 33634 on December 8, 1997 at 11:00 am to determine (a) the amount of AIG's unsecured claim; and (b) whether AIG is entitled to an administrative expense for any amounts held by the Debtor in trust as an agent of the State of Alabama pursuant to Alabama Statutes, Chapter 25.